1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   JASEN LYNN DUSHANE,                    No. 2:13-cv-2518 EFB P

11              Plaintiff,

12      v.

13   SACRAMENTO COUNTY JAIL,                ORDER

14              Defendant.

15

16          Plaintiff, a federal prisoner or detainee who spent some time incarcerated in the

17   Sacramento County Main Jail, is proceeding without counsel in a civil rights action brought

18   against jail staff.[1]  Plaintiff has been granted leave to proceed *in forma pauperis*.  ECF No. 16.

19      **I.      Screening Pursuant to 28 U.S.C. § 1915A**

20              **A.  Screening Requirements and Standards**

21          Federal courts must engage in a preliminary screening of cases in which prisoners seek

22   redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

23   § 1915A(a).  The court must identify cognizable claims or dismiss the complaint, or any portion

24   of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which

25   relief may be granted," or "seeks monetary relief from a defendant who is immune from such

26

27          [1] This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.
     § 636(b)(1) and is before the undersigned pursuant to plaintiff's consent.  *See* E.D. Cal. Local
28   Rules, Appx. A, at (k)(4).

                                          1

1    relief." *Id.* § 1915A(b).

2           A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a)

3    of the Federal Rules of Civil Procedure.  Rule 8(a)(2) "requires a complaint to include a short and

4    plain statement of the claim showing that the pleader is entitled to relief, in order to give the

5    defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

6    *Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)).

7    While the complaint must comply with the "short and plaint statement" requirements of Rule 8,

8    its allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 129 S.

9    Ct. 1937, 1949 (2009).

10          To avoid dismissal for failure to state a claim a complaint must contain more than "naked

11   assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of

12   action." *Twombly*, 550 U.S. at 555-557.  In other words, "[t]hreadbare recitals of the elements of

13   a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*,

14   129 S. Ct. at 1949.

15          Furthermore, a claim upon which the court can grant relief must have facial plausibility.

16   *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

17   content that allows the court to draw the reasonable inference that the defendant is liable for the

18   misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  When considering whether a complaint states a

19   claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v.*

20   *Pardus*, 127 S. Ct. 2197, 2200 (2007), and construe the complaint in the light most favorable to

21   the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

22                        **B.  Analysis**

23          Plaintiff's complaint raises a litany of claims regarding conditions at the Sacramento

24   County Main Jail ("SCMJ").  ECF No. 21.  Somewhere around 40 defendants are named.  *Id.* at

25   2-4.  Several claims concern inmates other than plaintiff; indeed, plaintiff seeks to pursue the case

26   as a class action on not just his own behalf but also on behalf of all inmates classified as "Totally

27   Separate" ("T-Sep") and "Disciplinary Isolation."  *Id.* at 1, 2.

28

2

Whether suits brought by a federal inmate against employees at a local correctional facility housing federal prisoners pursuant to contract with the federal government should be brought under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971) or 42 U.S.C. § 1983 is not clear. *Lewis v. Downey*. 581 F.3d 467, 471 n.3 (7th Cir. 2009) (noting this open question); *Tilley v. Allegheny County Jail*, No. 09-299, 2010 U.S. Dist. LEXIS 134883, at *2 n.3 (W.D. Pa. Dec. 21, 2010) (same). Plaintiff purports to proceed in this case under *Bivens*, which authorizes suits against federal officers for the violation of federal rights.[2] However, plaintiff's claims are entirely against jail staff – persons employed by Sacramento County and thus ordinarily considered state, rather than federal, actors. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). As the defendants here are not federal officers, plaintiff's suit may more properly be characterized as brought under 42 U.S.C. § 1983, which authorizes civil rights suits against persons acting under state authority. *Compare Bivens*, 403 U.S. at 389, 395-96 (holding that a damages suit may be pursued against a federal agent for violation of a constitutional right) *with* 42 U.S.C. § 1983 (authorizing damages suits for violation of federal rights against individuals whose authority derives from state law). Courts have not responded uniformly to such civil rights claims by federal prisoners against local jails, however.

In 1974, the Fifth Circuit directly confronted this issue and held that the proper focus of the inquiry is on the federal or state status of the *defendant* rather than the federal or state status of the *plaintiff*. *Henderson v. Thrower*, 497 F.2d 125, 125-26 (5th Cir. 1974). Thus, a federal inmate being housed in a city jail under a contract between the federal government and the city could sue jail staff under § 1983 because the defendants interacted with the federal inmates pursuant to authority granted by the city (and derived from the state). *Id. Henderson* did not discuss the applicability of *Bivens* (then a newer case), but a more recent district court case

---

[2] His earlier amended complaint was brought under 42 U.S.C. § 1983 based on allegations of deliberate indifference to serious medical needs either in violation of the Eighth Amendment (medical needs of a convicted prisoner) or the Fourteenth Amendment Due Process clause (medical needs of a pretrial detainee), ECF No. 8 at 3, and a claim that his exercise of religious rights under the First Amendment and RLUIPA were violated. *Id.* at 6-7. In a scatter shot approach, it also included claims for retaliation, deprivation of exercise claims, deprivation of property, violation of privacy, improper isolation, among others.

3

1     agrees. *Alvarez v. GEO Group, Inc.*, No. SA-09-CV-0299 OG (NN), 2010 U.S. Dist. LEXIS

2     17990 (W.D. Tex. Mar. 1, 2010).  In *Alvarez*, a federal inmate sued a private corporation that ran

3     the jail in which she was incarcerated along with several corporation employees who worked as

4     jail guards.  *Id.* at *1-2.  The jail operated under contract with the local county but also housed

5     federal inmates pursuant to a contract with the U.S. Marshals Service.  *Id.*  Hoping to benefit from

6     *Corrections Services Corporation v. Malesko*, 534 U.S. 61 (2001), in which the U.S. Supreme

7     Court held that a *Bivens* claim could not be maintained against a private corporation who

8     contracted with the federal government to care for federal prisoners, the GEO Group sought to

9     have the action characterized as one under *Bivens* rather than § 1983.  *Id.*  at *4-7; *see also*

10    *Minneci v. Pollard*, __ U.S. __, 132 S. Ct. 617, 620 (2012) (holding that no *Bivens* action lies

11    against employees of a privately operated federal prison where state tort law offered adequate

12    alternative damages actions against them).  The court disagreed, finding that the corporation

13    operated the jail under county rather than federal authority, and that the plaintiff's claim was

14    therefore properly brought under § 1983 rather than *Bivens*.  *Id.*  at *7-8.  Nevertheless, this

15    question remains open and somewhat controversial.  *See Manjarrez v. Bureau of Prisons*, No.

16    PE:10-CV-00016-RAJ, 2011 U.S. Dist. LEXIS 153766, at *13-14 (W.D. Tex. June 28, 2011)

17    (expressly disagreeing with *Alvarez* and concluding that employees of the GEO Group were not

18    state actors under § 1983 because they were "employees of a private entity contracting with the

19    government to house federal prisoners.").

20         For the purposes of screening only, the court will allow plaintiff's claims to proceed as

21    potentially considered cognizable under either § 1983 or *Bivens* and defer determination of the

22    proper vehicle for this suit until later proceedings with appropriate briefing on the question.

23         <u>Class Claims.</u>  Although plaintiff purports to bring this case as a class action, his class

24    allegations are not cognizable.  A layperson cannot ordinarily represent the interests of a class.

25    *See McShane v. United States*, 366 F.2d 286 (9th Cir. 1966).  This rule becomes nearly absolute

26    when, as here, the putative class representative is incarcerated and proceeding *pro se*.  *Oxendine*

27    *v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975).  Plaintiff cannot "fairly and adequately protect

28

1    the interests of the class," as required by Rule 23(a)(4) of the Federal Rules of Civil Procedure.

2    *See Martin v. Middendorf*, 420 F. Supp. 779 (D.D.C. 1976).  Absent the class action device,

3    plaintiff lacks standing to pursue claims on behalf of other inmates.  Article III of the

4    Constitution's "case or controversy" language requires that, to invoke the power of a federal court

5    to adjudicate a case, the plaintiff must allege personal injury fairly traceable to the defendant's

6    allegedly unlawful conduct and likely to be redressed by the requested relief.  *Allen v. Wright*,

7    468 U.S. 737, 750-51 (1984).  Plaintiff's allegations regarding other inmates, including "at risk"

8    or suicidal inmates (other than himself), inmate Paea, and inmate Chernenko, are not cognizable

9    because plaintiff lacks the required standing to pursue them.

10          This action must therefore be construed as an individual civil suit brought by plaintiff.

11   *See C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987) (non-attorney has a right to

12   appear pro se on his own behalf, but "has no authority to appear as an attorney for others").

13   Plaintiff's claims on behalf of other inmates are dismissed without leave to amend.

14          <u>Claims Against SCMJ.</u>  The body of plaintiff's complaint does not list SCMJ as a

15   defendant but its caption does.  ECF No. 21.  A local government entity is a "person" subject to

16   liability under 42 U.S.C. § 1983 where the entity's official policy or custom causes a

17   constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a city

18   or county may not be held vicariously liable for the unconstitutional acts of its employees under

19   the theory of respondeat superior, *see Board of Cty. Comm'rs. of Bryan Cty. v. Brown,* 520 U.S.

20   397, 403 (1997); *Monell*, 436 U.S. at 691.  To impose municipal liability under § 1983 for a

21   violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a

22   constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3)

23   that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4)

24   that the policy is the moving force behind the constitutional violation.  *Plumeau v. School Dist.*

25   *#40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

26          To the extent that plaintiff's claims are premised under *Bivens* rather than § 1983 (*see*

27   discussion, above), it is questionable whether the claims are cognizable against the SCMJ.  The

28

5

1    court could locate no authority regarding the viability under *Bivens* of a suit against a municipal

2    agency that contracts with the federal government.  However, the U.S. Supreme Court has held

3    that federal agencies are not subject to suit under *Bivens*.  *FDIC v. Meyer*, 510 U.S. 471, 486

4    (1994).  As noted above, the court flags but does not resolve the issue in this screening order and

5    instead defers the question to a future motion and appropriate briefing by the parties.

6          Plaintiff's complaint, liberally construed, challenges a number of policies at SCMJ.  First,

7    plaintiff alleges that SCMJ has a "safety suit" policy under which it places suicidal inmates in an

8    ineffective, yet embarrassing, suit that is purportedly for safety but actually serves to disguise

9    their indifference and "make inmates feel discouraged."[3]  ECF No. 21 at 4-5.  Plaintiff alleges

10   that he was placed in such a suit after he hung himself in his jail cell.  *Id.* at 4.  Plaintiff's

11   allegations that the suit was an ineffective response to his suicide that was intended to embarrass

12   him rather than treat his mental illness are sufficient to state a claim that SCMJ enforced a policy

13   that was the moving force behind a deliberately indifferent response to his serious medical needs.

14   Accordingly, for the purposes of screening, plaintiff has presented a cognizable claim against

15   SCMJ with respect to his "safety suit" allegations.

16         Second, plaintiff alleges that SCMJ's schedule governing inmates' time outside of their

17   cells provides insufficient time for outdoor exercise in violation of the Eighth Amendment.  *Id.* at

18   6.  Inmates have a constitutional right to exercise, and the denial of out-of-cell exercise for an

19   extended period of time is sufficiently serious to state a claim under the Eighth Amendment.

20   *Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010).  Plaintiff alleges that the schedule in

21   effect at SCMJ from July 2012 to February 2014 allowed inmates three hours outside of their

22   cells per week, during which time the inmates were permitted to exercise, shower, shave, and

23   make calls.  ECF No. 21 at 6.  The current policy allows inmates 30 minutes per day for the same

24   activities.  *Id.*  If an inmate elects to shower on a given day, then no time remains for any other

25   activity, including exercise.  *Id.*  Additionally, plaintiff alleges that the jail has no program for

26   outside recreation and that he has only been offered to go outside two times in 19 months.  *Id.*

---

27         [3] The complaint does not identify what is allegedly being "discouraged", other than

28   perhaps the morale of inmates wearing the suits.

1    Plaintiff elected to shower rather than go outside.  *Id.* at 6-7.

2            In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that it was

3    impermissible for prison authorities to force an inmate to choose between use of the law library

4    and out-of-cell exercise for eight months.  *Id.* at 343-44.  "Forcing a prisoner to choose between

5    using the prison law library and exercising outdoors is impermissible because "an inmate cannot

6    be forced to sacrifice one constitutionally protected right solely because another is respected."  *Id.*

7    (quoting *Allen v. City and County of Honolulu*, 39 F.3d 936, 940 (9th Cir. 1994)).  For the

8    purposes of screening under § 1915A, plaintiff has stated a cognizable claim that the out-of-cell

9    policies of SCMJ impermissibly forced him to sacrifice his right to out-of-cell exercise in order to

10   maintain adequate hygiene and provided inadequate outdoor time under the Eighth Amendment.

11           Third, plaintiff alleges that jail psychiatric services personnel interview inmates through a

12   hole in the doors of their cells which provides no privacy.  ECF No. 21 at 7.  The scope of an

13   inmate's constitutional right to the privacy of his health information is not clearly defined.  The

14   Ninth Circuit has held, however, that "prisoners do not have a constitutionally protected

15   expectation of privacy in prison treatment records when the state has a legitimate penological

16   interest in access to them."  *See Seaton v. Maybert*, 610 F.3d 530, 534-35 (9th Cir. 2010).   Even

17   assuming that plaintiff enjoys some constitutional right to keep his psychiatric interviews private,

18   plaintiff has failed to state a cognizable claim against SCMJ because he has not alleged that the

19   interviews were conducted through his cell door pursuant to jail policy, that the jail had no

20   legitimate penological reason for conducting the interviews in this manner, or that highly personal

21   information was revealed to others through these interviews.  *See Klein v. MHM Corr. Servs.,* No.

22   08-11814-MLW, 2010 U.S. Dist. LEXIS 83818, at *13-15 (D. Mass. Aug. 16, 2010) (noting that,

23   even where courts have recognized a constitutional right to medical privacy in prisons, such a

24   right is narrow and is breached only by the disclosure of "intensely personal" medical

25   information).  Thus, plaintiff's claim regarding the psychiatric interviews must be dismissed with

26   leave to amend.

27   /////

28

7

1    Fourth, plaintiff alleges that SCMJ selectively enforces rules against inmates who file

2  grievances.  ECF No. 21 at 7.  Again, this claim against the jail fails because plaintiff has failed to

3  allege a jail policy of selective rule enforcement.  To the extent plaintiff alleges that, regardless of

4  official policy, officers retaliate against inmates who file grievances, plaintiff must allege facts

5  showing that a specific officer or officers selectively enforced a rule (or took some other adverse

6  action) against him in order to retaliate against him for filing grievances.  Accordingly, plaintiff's

7  claim against SCMJ for selective rule enforcement must be dismissed with leave to amend.

8    Fifth, plaintiff alleges that SCMJ does not provide inmates with the jail's rules.  *Id.*

9  Plaintiff has identified no federal entitlement to be provided with a copy of the jail's rules and the

10  court is aware of none.  Nor has he alleged that the jail would not provide these rules upon

11  request.  Accordingly this claim will be dismissed with leave to amend.

12    Sixth, plaintiff alleges that SCMJ "takes away books and all exercise" to punish inmates

13  for rules violations, which effectively locks inmates in their cells for up to 20 days without

14  outside exercise.  *Id.*  This claim fails because plaintiff has alleged no jail policy pursuant to

15  which such punishment is imposed and plaintiff has not alleged that he himself has been

16  subjected to such punishment.  Accordingly this claim will be dismissed with leave to amend.

17    Seventh, plaintiff alleges that the SCMJ grievance system has only one step.  *Id.*  This

18  claim fails as a matter of law because inmates are not constitutionally entitled to a specific

19  grievance procedure.  *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855

20  F.2d 639, 640 (9th Cir. 1988).  As this claim cannot be cured by amendment, it should be

21  dismissed without leave to amend.

22    Eighth, plaintiff contests various financial policies of the jail.  ECF No. 21 at 8.

23  Specifically, plaintiff alleges that the jail holds a "negative running welfare balance" on inmate

24  accounts for four years.  *Id.*  He says he had to pay off a $94 debt before he could receive any

25  money from his family.  *Id.*  He complains that SCMJ charges inmates $2.50 per week to receive

26  indigent envelopes, soap, and deodorant, and also charges inmates a medical copay, and that Jail

27  commissary prices are "inflated."  *Id.*  Although inmates have a property interest in their trust

28

1    account funds that is protected by the Due Process Clause, *Quick v. Jones*, 754 F.2d 1521, 1523

2    (9th Cir. 1984), charging inmates a co-pay for medical care does not violate the Constitution

3    where medical care is not denied.  *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404,

4    408 (9th Cir. 1985) ($3.00 co-pay fee for prisoners cannot be construed as deliberate indifference

5    to inmates' medical needs); *see also Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997)

6    (same); *Gardner v. Wilson*, 959 F. Supp. 1224, 1228 (C.D. Cal. 1997) ($5.00 co-pay does not

7    amount to deliberate indifference to inmates' medical needs); *Bihms v. Klevenhagen*, 928 F.

8    Supp. 717, 718 (D. Tex. 1996) (state may require inmate to pay toward his medical care); *Martin*

9    *v. Debruyn*, 880 F. Supp. 610, 614 (N.D. Ind. 1995) ("Nothing in the Eighth Amendment . . .

10   requires a state to provide an inmate, free of charge, with a necessary commodity that would not

11   be free outside the prison walls and which the inmate has the legal means to obtain."); *Del*

12   *Rosario v. Agler*, No. 1:12-cv-00336-EJL, 2014 U.S. Dist. LEXIS 25466, at *9-10 (D. Id. Feb 26,

13   2014).   Thus, plaintiff's claims regarding his trust account fail.

14          Similarly, while denial of hygiene items may support a claim under the Eighth

15   amendment, charging for such items does not.  *Hardy v. Parnell*, No. NO. 5:13CV-P73-R, 2013

16   U.S. Dist. LEXIS 158028, at *11-12 (W.D. Ky. Nov. 5, 2013).  Plaintiff has not alleged that he

17   was denied medical care, envelopes, or hygiene items under the jail's policies, but simply that he

18   was required to pay some money for them.  Plaintiff's allegation regarding a "negative running

19   welfare balance" is simply too vague to assert a cognizable claim.  Lastly, "inflated commissary

20   prices" provide no basis for a constitutional claim.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th

21   Cir. 1996) (holding that there is no constitutional right to canteen items).  Accordingly, this claim

22   will be dismissed with leave to amend.

23          Ninth, plaintiff alleges that SCMJ allows officers to cancel inmates' dayroom privileges

24   for 36 hours without any process.  ECF No. 21 at 8.  Again plaintiff has not alleged that he was

25   personally deprived of dayroom privileges.  But even if plaintiff alleged such personal

26   deprivation, the claim would still fail.  Generally, a prisoner does not have a liberty interest in

27   avoiding the imposition of more adverse conditions of confinement.  *Wilkinson v. Austin*, 545

28

1    U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005).  A liberty interest arises when the

2    adverse action imposes an "atypical and significant hardship on the inmate in relation to the

3    ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).  A deprivation

4    of dayroom access for 36 hours does not present such a hardship and accordingly the action

5    contested does not arise to a violation of due process. *Accord, Smith v. Grams*, No. 09-cv-387-

6    bbc, 2009 U.S. Dist. LEXIS 117621, at *7-8 (W.D. Wis. Dec. 17, 2009).  Because this claim fails

7    as a matter of law, it will be dismissed without leave to amend.

8           Tenth, plaintiff alleges that SCMJ confiscated all sheets to prevent suicides but left other

9    items inmates may use to commit suicide.  ECF No. 21 at 8.  According to plaintiff, this shows

10   that SCMJ confiscated the sheets to save money rather than prevent suicides. *Id.*  The Eighth

11   Amendment requires prison officials to provide prisoners with the basic necessities of life such as

12   food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511

13   U.S. 825, 834 (1994).  A prison official violates the Eighth Amendment when he or she deprives

14   an inmate of something sufficiently serious with a deliberately indifferent mindset. *Id.*  Plaintiff's

15   claim fails because he has not alleged facts showing a sufficiently serious deprivation of life's

16   basic necessities.  He has not alleged facts showing that the confiscation of sheets deprived him of

17   the bedding he needs for adequate warmth or hygiene or to address some other basic need.

18   Accordingly this claim will be dismissed with leave to amend.

19          Eleventh, plaintiff alleges that SCMJ prohibits inmate-to-inmate correspondence within

20   the jail. *Id.*  Prisoners enjoy a First Amendment right to send and receive mail. *Witherow v. Paff*,

21   52 F.3d 264, 265 (9th Cir. 1995).  Nevertheless, prisons may adopt policies that impinge on that

22   right as long as the policies are "reasonably related to legitimate penological purposes." *Turner v.*

23   *Safley*, 482 U.S. 78, 89 (1987).  Courts consider four factors in determining the reasonableness of

24   a prison regulation: (1) whether there is a valid, rational connection between the prison regulation

25   and the legitimate governmental interest put forward to justify it; (2) whether there are alternative

26   means of exercising the right that remain open to prison inmates; (3) the impact accommodation

27   of the asserted constitutional right will have on guards and other inmates and on the allocation of

28

1  prison resources generally; and (4) the absence of ready alternatives, or, in other words, whether

2  the rule at issue is an exaggerated response to prison concerns.  *Id.* at 89-90.  As plaintiff is not

3  expected to know at this stage SCMJ's reasons for the correspondence ban, for the limited

4  purpose of screening only, the court assumes a cognizable claim predicated on a claim that the

5  ban violates his First Amendment right to send and receive mail.

6          Twelfth, plaintiff alleges that SCMJ forces inmates to rise at 6 a.m. to be counted.  *Id.* at

7  9.  Plaintiff has alleged no facts that would show that the 6 a.m. count violates the Eighth

8  Amendment.  Plaintiff has not identified any other constitutional or other federal entitlement that

9  the 6 a.m. count infringes on, and the court is aware of none.  Accordingly this claim will be

10  dismissed without leave to amend.

11          Thirteenth, plaintiff alleges that SCMJ allows officers to bring distracting cell phones and

12  laptops to work.  *Id.*  Again plaintiff has failed to identify what federal right this policy violates.

13  Nor has plaintiff alleged that his own rights were violated and that this policy was a moving force

14  behind the violation.  Accordingly this claim will be dismissed without leave to amend.

15          Fourteenth, plaintiff alleges that T-Sep inmates are not provided "proper cleaning times"

16  or proper cleaning equipment such as brooms, mops, or rags.  *Id.*  Plaintiff has not alleged an

17  SCMJ policy regarding cleaning equipment or how that policy resulted in a deprivation of his

18  constitutional rights.  There is no allegation that plaintiff's conditions of confinement were

19  unsanitary.  Accordingly this claim will be dismissed with leave to amend.

20          Fifteenth, plaintiff alleges that SCMJ employs overbroad categories to classify inmates,

21  which results in non-violent federal offenders being housed with violent offenders.  *Id.*  Plaintiff

22  alleges that this policy has resulted in his being housed with an inmate accused of "chopping off a

23  woman's head with a kitchen knife" and "a man accused of murdering his own child with an ax."

24  *Id.*  The Eighth Amendment imposes a duty upon prison officials "to protect prisoners in custody

25  from violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)

26  (quotation omitted).  In order to succeed on a claim based upon the violence of a fellow inmate, a

27  plaintiff must meet two requirements.  *Id*.  "First, the deprivation alleged must be, objectively,

28

sufficiently serious," where the inmate "is incarcerated under conditions posing a substantial risk of serious harm."  *Id*. (internal quotation marks and citations omitted).  Second, a prisoner must show that the prison official had a "sufficiently culpable state of mind[,]" one of "deliberate indifference to inmate health and safety."  *Id*. (internal quotation marks and citations omitted). Under the *Farmer* test, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id*. at 842.  Plaintiff has alleged insufficient facts to show that SCMJ's housing policy placed him with inmates who posed an unreasonable risk of harming him.[4]  While these inmates may have been charged with violent crimes, plaintiff has alleged no facts showing that they posed an unreasonable risk of danger to him within the jail.  Accordingly, this claim will be dismissed with leave to amend.

Finally, plaintiff alleges that there is no working television in male disciplinary isolation but there is one in female disciplinary isolation.  ECF No. 21 at 9.  Plaintiff does not claim that lack of a television is the result of discrimination but rather that the television in male disciplinary isolation broke and was not replaced.  *Id.*  This claim fails as a matter of law.  Prisoners have no constitutional right to television.  *Bontty v. Walker*, No. 12-1010, 2012 U.S. Dist. LEXIS 58773, at *4 (E.D. Cal. Apr. 26, 2012).  Accordingly the claim will be dismissed without leave to amend.

Defendants Against Whom Insufficient Facts Have Been Pleaded.  As noted above, plaintiff lists around 40 defendants.  However, the vast bulk of the factual allegations of the complaint are not tied to any identified defendant.  Rather, plaintiff avoids identifying the

---

[4] While it is unclear from the allegations of the complaint whether plaintiff was confined at SCMJ pre-trial or following a judgment of conviction, it appears that plaintiff at the time was a federal pretrial detainee being housed in the SCMJ.  While the claims of pretrial detainees regarding their conditions of confinement are governed by the Fourteenth Amendment rather than the Eighth Amendment, the same legal standards apply.  *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010); *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010) (pre-trial detainee's failure-to-protect claim was governed by the same "deliberate indifference" standard as applies under the Eighth Amendment to convicted prisoners); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment . . . we apply the same standards.")

1    defendant(s) involved in his various claims by phrasing his allegations in the passive voice or

2    simply makes allegations against "officials," "staff," "deputies," or "defendants."  *E.g.*, ECF No.

3    21 at 4 (plaintiff told "jail staff" he was suicidal; "psychiatric staff" did not provide plaintiff with

4    his requested medications; plaintiff "was then moved" to the 8th floor; "deputies" fail to perform

5    hourly unit walkthroughs).  Plaintiff has failed to state facts showing how any of the following

6    defendants personally participated in any alleged deprivation of his federal rights: Wyant,

7    Millican, Roberts, Yee, Gomez, Blane, Love-Munoz, Steed, Gonsalves, Gayman, Kaselic,

8    Scofield, Keys, Fitzgerald, Orosco, Clanton, Stewart, Allmon, Arambula, Purser, Francis,

9    Dominguez, Kibak, Rosales, Wood, Henderson, Moor, Alejandre, Chantry, Able, Fritz, Roof, and

10    Jones.  Plaintiff's general allegations that these individuals worked in the jail, and "had direct

11    knowledge by grievance and operations" are not sufficient to state claims against them.  Under

12    both *Bivens* and § 1983, a plaintiff must allege facts showing the personal involvement of each

13    defendant in a violation of plaintiff's federal rights.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675-77

14    (2009).  Supervisory liability may not be imposed under either legal framework.  *Id.*

15    Accordingly, these defendants must be dismissed with leave to amend.

16           Eighth Amendment Claims.  Plaintiff alleges that the conditions of his confinement at

17    SCMJ violate the Eight Amendment.  ECF No. 21 at 10.  Most of plaintiff's Eighth Amendment

18    allegations against defendants other than SCMJ must be dismissed for failure to identify a

19    defendant who was personally involved in the alleged deprivation, as discussed in the preceding

20    paragraph.  Plaintiff does include some more specific allegations, however, with regard to two

21    named defendants.

22           First, plaintiff alleges that he hung himself after pushing the emergency button and

23    informing defendant Her that he had hurt himself and was going to continue to do so, and that he

24    was only found by chance by an inmate returning from a visit.  *Id.* at 4.  These facts are sufficient

25    to state a cognizable Eighth Amendment claim against defendant Her.

26           Second, plaintiff alleges that when he was housed on the 8th Floor of SCMJ, he was

27    neglected.  *Id.* at 5.  He says he wrote grievances about instances of neglect to defendant

28

1    Solokalov, but he ignored them.  *Id.*  These allegations are insufficient to state an Eighth

2    Amendment claim, because plaintiff has failed to provide any facts regarding the alleged

3    incidents of neglect such that the court can determine whether plaintiff was deprived of the

4    minimal civilized measure of life's necessities.  This claim will therefore be dismissed with leave

5    to amend.

6         Free Exercise Claims.  Plaintiff alleges that defendant Toliver is the director of chaplains

7    at SCMJ and is directly responsible for religious diets.  *Id.* at 4.  Plaintiff claims that he was

8    forced to go on a hunger strike in order to receive his religious diet.  *Id.* at 7.  According to

9    plaintiff, defendant Toliver "denies Muslim Kosher diet and forces them to be vegetarians or

10   violate their dietary laws."  *Id.*  "When at first [plaintiff] started his grievances the Muslims were

11   given Kosher.  Upon learning that a fellow 7th day Adventist was allowed Kosher [plaintiff]

12   attempted to receive Kosher.  This began a long battle.  The jail removed some inmates from their

13   Kosher diets.  The jail claims that Kosher is for Judaism. . . .  Muslims require the same laws as

14   Judaism and some 7th day Adventists.  To force an inmate to eat bean sandwiches to observe his

15   'diet' requirements as reported by chaplain Toliver is forcing a great sacrifice against choosing to

16   not follow at all."  *Id.* at 8.

17        Plaintiff's point is difficult to follow.  Clearly, "[i]nmates . . . retain protections afforded

18   by the First Amendment, including its directive that no law shall prohibit the free exercise of

19   religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations and

20   citations omitted).  The protections of the Free Exercise Clause are triggered when prison officials

21   substantially burden the practice of an inmate's religion by preventing him from engaging in

22   conduct which he sincerely believes is consistent with his faith.  *Shakur v. Schriro*, 514 F.3d 878,

23   884-85 (9th Cir. 2008).  However, plaintiff has failed to state a cognizable free exercise claim

24   against defendant Toliver.  He does not allege that he has a sincerely-held belief that he must eat a

25   Kosher diet, but rather that he attempted to get such a diet upon learning that it was provided to

26   another Seventh-day Adventist.  His statement with regard to "bean sandwiches" implies that he

27   was possibly provided with some dietary accommodation.  Plaintiff does not allege that such

28

1   accommodation was inconsistent with his beliefs.  Plaintiff also alleges that defendants Pattison,

2   Andris, Massa, and Rider violated his free exercise right but he has failed to allege any facts

3   showing their personal involvement in the alleged infringement of this right.  Accordingly,

4   plaintiff's free exercise claims against all defendants will be dismissed with leave to amend.

5        Free Speech Claims.  Plaintiff alleges that defendants Toliver, Pattison, Andris, Massa,

6   and Rider violated his free speech rights "by the 'all or nothing' ban on inmate to inmate

7   correspondence within the jail."  ECF No. 21 at 10.  This policy was discussed above in the

8   portion of this order addressing plaintiff's claims against SCMJ.  Regarding plaintiff's assertion

9   of the same claim against these specific defendants, plaintiff has alleged no facts showing their

10   personal involvement in the adoption or enforcement of this policy.  Accordingly, plaintiff's first

11   amendment claims against defendants Toliver, Pattison, Andris, Massa, and Rider will be

12   dismissed with leave to amend.

13        Plaintiff also alleges that "the defendants" have violated his free speech rights by ordering

14   him not to file grievances on behalf of incompetent inmates.  Even assuming that plaintiff has a

15   constitutional right to file grievances on behalf of other inmates[5], plaintiff has failed to identify

16   which defendants violated that right and present facts showing the personal involvement of such

17   defendants in the infringement of the right.  Accordingly, this claim will be dismissed with leave

18   to amend.  Plaintiff's claim that he was retaliated against for filing grievances on behalf of others

19   will be discussed in the "Retaliation" paragraph below.

20        Fourth Amendment Claims.  Plaintiff claims that "the defendants" have violated his

21   Fourth Amendment right to be free from unreasonable search and seizure "by throwing away

22

23        [5] While plaintiff has a First Amendment right to file grievances against prison officials,
24   *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012), it is less clear that he has a freestanding
     First Amendment right to present complaints on behalf of others.  The Ninth Circuit has not
     spoken on the question.  However, some courts have recognized such a right where the assisted
25   inmate would otherwise be unable to grieve as a derivative of the assisted inmate's right of access
     to the courts.  *Herron v. Harrison*, 203 F.3d 410, 415-16 (6th Cir. 2000); *see also Vandiver v.*
26   *Martin*, 48 F. App'x. 517, 519 (6th Cir. Mich. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 395
     (6th Cir. 1999); *Entler v. Bolinger*, 2008 U.S. Dist. LEXIS 27523, at *17-18 (E.D. Wash. Mar.
27   21, 2008) (finding that an inmate engaged in protected conduct for purposes of stating a
28   retaliation claim when he helped another inmate prepare a grievance).

1    books" and "searching."  ECF No. 21 at 11.  Because plaintiff lacks a legitimate expectation of

2    privacy in his prison cell, his claim that "searching" violated his Fourth Amendment rights fails.

3    *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984) ("[T]he Fourth Amendment proscription against

4    unreasonable searches does not apply within the confines of the prison cell.").  The Fourth

5    Amendment also affords no protection to a prisoner against the seizure of his property.  *Taylor v.*

6    *Knapp*, 871 F.2d 803, 806 (9th Cir. 1988).  Accordingly, plaintiff's Fourth Amendment claims

7    will be dismissed without leave to amend.  Plaintiff's claims that these actions were taken as a

8    retaliatory measure will be addressed in the "Retaliation" paragraph below.

9             <u>Retaliation Claims.</u>  Plaintiff alleges a number of actions taken against him in retaliation

10   for his filing of grievances.  First, he claims that defendant Toliver "attempted to get [plaintiff]'s

11   minister's license revoked in retaliation for grievances filed."  ECF No. 21 at 7.  Second, he

12   alleges generally that "defendants" have retaliated against him for filing grievances.  *Id.* at 10.

13   Lastly, he alleges that "defendants" have thrown away his books and are "searching" in retaliation

14   for his grievances.  *Id.*at 11.  To state a viable First Amendment retaliation claim, a prisoner must

15   allege five elements: "(1) An assertion that a state actor took some adverse action against an

16   inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

17   inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

18   legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

19   Conduct protected by the First Amendment includes communications that are 'part of the

20   grievance process."  *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).  Construing

21   plaintiff's allegations generously and for the sole purpose of screening the complaint under

22   § 1915A, plaintiff has stated a cognizable retaliation claim against defendant Toliver.  Plaintiff

23   has not stated a cognizable retaliation claim with regard to the seizure of his books, the

24   "searching," because he has failed to identify the defendant(s) whom allegedly retaliated against

25   him and state facts showing their personal involvement in such retaliation.  Accordingly,

26   plaintiff's remaining retaliation claims will be dismissed with leave to amend.

27   /////

28

16

1        Joinder of Unrelated Claims.

2              Having identified plaintiff's potentially cognizable claims, the court must nevertheless

3    dismiss these claims with leave to amend because plaintiff has joined unrelated claims in this

4    action.  "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or

5    third-party claim, may join, either as independent or alternate claims, as many claims, legal,

6    equitable or maritime, as the party has against an opposing party."  Fed. R. Civ. P. 18(a).  Thus,

7    multiple claims against a single party are permissible, but Claim A against Defendant 1 should

8    not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different

9    defendants belong in different suits, not only to prevent the sort of morass a multiple-claim,

10   multiple-defendant suit produces, but also to ensure that prisoners pay the required filing fees.

11   The Prison Litigation Reform Act limits to 3 the number of frivolous or meritless suits or appeals

12   that any prisoner may file without the prepayment of the required fees.  28 U.S.C. § 1915(g);

13   *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff cannot bring all his claims in a

14   single action simply because they all relate to his time at SCMJ; instead, he must file an amended

15   complaint containing only related claims.  As the complaint stands now, the court has identified

16   the following potentially cognizable claims: (1) against SCMJ for violating of the Eighth

17   Amendment through the safety suit policy; (2) against SCMJ for violating of the Eighth

18   Amendment by its out-of-cell schedule; (3) against SCMJ for violating of the First Amendment

19   by banning inmate-to-inmate correspondence; and (4) against defendant Her for violating the

20   Eighth Amendment by failing to reasonably respond to plaintiff's statements that he was going to

21   hurt himself.  Plaintiff's claim against Her is unrelated to his claims against SCMJ and thus must

22   be brought in a separate suit.  If plaintiff elects to attempt to cure other claims he has inadequately

23   pleaded in his amended complaint, he is admonished to include only related claims.

24        **II.      Motion for Counsel**

25              Plaintiff asks the court to appoint him counsel.  ECF Nos. 18, 22.  Plaintiff does not have

26   a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525

27   (9th Cir. 1997), and the court cannot require an attorney to represent plaintiff pursuant to 28

28

U.S.C. § 1915(e)(1).  *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 298 (1989).

In certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1).  *Rand*, 113 F.3d at 1525.  However, without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases.  In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id*. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances.  At this early stage in the proceedings, it appears that plaintiff can articulate and pursue his claims adequately.  He has successfully amended his complaint and complied with a court order to submit a completed *in forma pauperis* application.  This early in the case, the court is unable to determine whether plaintiff is likely to succeed on the merits; however, as discussed below, plaintiff has raised numerous claims that are not cognizable.[6]  *Id*.  Accordingly, plaintiff's request for counsel will be denied without prejudice.

**III.   Order**

For the foregoing reasons, it is hereby ORDERED that:

1.  Plaintiff's motions for appointment of counsel (ECF Nos. 18, 22) are denied without prejudice.

2.  The fourth amended complaint (ECF No. 21) is dismissed with leave to amend as noted in this order.

*/////*

---

[6] Among those are plaintiff's class claims, the presence of which does not change the conclusion that this case does not currently present exceptional circumstances.  *See Goolsby v. Cate*, 1:13-cv-00119-GSA-PC, 2013 U.S. Dist. LEXIS 77020, at *4 (E.D. Cal. June 6, 2013) ("Plaintiffs' desire to pursue class-action relief does not present an "exceptional circumstance;" if it did, every pro se prisoner seeking class-action relief would automatically be entitled to the appointment of counsel.").

3.  If plaintiff elects to file an amended complaint to cure the deficiencies noted in this order, he shall do so within 30 days of the date of service of this order.  Plaintiff is admonished that failure to file an amended complaint will result in the dismissal of this action.

DATED:  August 5, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE